**Vera ROBINSON, Plaintiff,**

v.

**Robert RUBIN, Secretary of Treasury, Defendant.**

**No. Civ.A. H–98–1509.**

United States District Court,
S.D. Texas,
Houston Division.

June 21, 1999.

Stephen Edward Menn, Attorney at Law, Houston, TX, for Vera Robinson, plaintiff.

Anthony Wei Chun Hong, Office of U.S. Attorney, Houston, TX, for Robert Rubin, Sec. of Treasury, defendant.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Pending before this court in this employment civil rights lawsuit is a motion for summary judgment filed by defendant Robert Rubin, Secretary of the United States Treasury Department. (Docket Entry No. 25). Plaintiff, Vera Robinson, has responded. (Docket Entry No. 29). Defendant has replied. (Docket Entry No. 33). Based on the motion, the pleadings, the parties' submissions, and the applicable law, this court GRANTS defendant's motion for summary judgment. The reasons for this ruling are stated below.

### I. Background

Robinson, an African–American female, is employed as a Chapter 13 Bankruptcy Specialist with the Special Procedures Branch of the Collection Division of the Internal Revenue Service in Houston, Tex-

as. She has worked for the IRS for approximately thirteen years. Robinson's job classification is General Service ("GS") level 9. In this lawsuit, Robinson alleges retaliation, race discrimination, and sex discrimination under Title VII; violations of her rights under the federal whistle-blower statute; and violations of her First Amendment, due process, and equal protection rights under the United States Constitution.

Robinson bases her claims on allegations she raised in two Equal Employment Opportunity ("EEO") complaints, numbers 97–2223 and 97–2270.[1] In EEO complaint number 97–2223, Robinson alleged that in February 1997, her first-line supervisor, Lynne Langdale, gave Robinson an undeservedly low annual evaluation in retaliation for prior EEO complaints.[2] (Docket Entry No. 25, Ex. 7). Robinson signed the EEO counseling report, dated March 6, 1997, (*id.*, Ex. 8) and the EEO complaint, dated March 27, 1997. (*Id.*, Ex. 7). Robinson marked the box on these forms to state that she based her claim on "retaliation reprisal," not "race," "color," "sex," or "national origin" discrimination.

Langdale gave Robinson an overall rating of 3.57 on a scale beginning at 1 (unacceptable) and ending at 5 (outstanding), for the period ending February 2, 1997. (*Id.*, Ex. 11). The IRS considers a rating of 3.57 to be "fully successful." This rating represented an increase over the 3.0 rating that Langdale gave Robinson in the evaluation for the previous year, Robinson's first as a GS–9 bankruptcy specialist. (*Id.*, Ex. 12). Robinson nevertheless alleges that the 3.57 rating is retaliatory because it is a "low rating at the IRS" and prevented her from receiving promotions and pay raises. (Docket Entry No. 29, p. 5).

Langdale supervised and evaluated two other bankruptcy specialists in February 1997: Rita Galvan and Jacqueline Jackson. (Docket Entry No. 25, Ex. 13, Declaration of Lynne Langdale, ¶ 2). Both are female; Galvan is Hispanic. Galvan received an overall rating of 4.0; Jackson received an overall rating of 3.29. (*Id.*, Exs. 14, 15). Langdale attributed Galvan's higher rating to her prior service as a bankruptcy technician, which "would have exposed [her] to knowledge and experiences that would have helped her function as a bankruptcy specialist." (*Id.*, Ex. 13, ¶ 2). Robinson

1. Between 1991 and February 1998, Robinson filed at least six EEO complaints of discrimination with the Treasury Department, including EEO complaint numbers 91–2122, 91–2297, 95–2265, 96–2211, 97–2223, and 97–2270. (Docket Entry No. 25, Ex. 2, Declaration of Jerry Armstrong, Director of the Department of the Treasury Dallas Regional Complaint Center). The allegations raised in these six EEO complaints formed the basis of a Title VII lawsuit that Robinson filed in federal court on April 14, 1997, styled *Robinson v. United States*, No. Civ. A. No. H–97–1238. In addition to her Title VII claims, Robinson asserted tort claims against her supervisors, Jon Williamson and Lynne Langdale. (Docket Entry No. 25, Ex. 4, Robinson's First Amended Complaint in H–97–1238). The court dismissed Robinson's tort claims as well as her Title VII claims based on EEO complaint numbers 91–2122, 91–2297, and 95–2265. (Docket Entry No. 25, Ex. 5, Order of Dismissal of April 8, 1998). The court also dismissed, without prejudice, the Title VII claims based on EEO complaint numbers 96–2611, 97–2223, and 97–2270, because Robinson had not yet exhausted her

administrative remedies. (*Id.;* Docket Entry No. 25, Ex. 6, Order of March 11, 1998, in H–97–1238, p. 5).

In 1992, Robinson filed a lawsuit in federal court unrelated to the six EEO complaints discussed above. In this lawsuit, Robinson asserted Title VII discrimination and retaliation claims against one of her first supervisors, Frank Jugo. The court entered a take-nothing judgment after trial, a decision upheld by the Fifth Circuit. *See Robinson v. Brady*, No. Civ. A. H–92–1612 (S.D.Tex. Feb. 23, 1994), *aff'd sub nom. Robinson v. Rubin*, No. 94–20636 (5th Cir. Nov.24, 1995), *available at* Docket Entry No. 25, Ex. 3.

2. Robinson now asserts that another IRS supervisor, Jon Williamson, actually authored the evaluation at issue. (Docket Entry No. 29, att. a, Affidavit of Vera Robinson, ¶ 3). Defendant has submitted evidence that Langdale prepared the evaluation and Williamson, as Robinson's second level supervisor, also had authority to prepare and approve this evaluation. (Docket Entry No. 33, Exs. 1–2). In any case, this issue is immaterial to the legal analysis of Robinson's claim.

did not previously serve as a bankruptcy technician.

The allegations raised in EEO complaint number 97–2270 and in this lawsuit arose out of Robinson's working relationship with a GS–11 bankruptcy advisor named Liana White. Employees in Robinson's division typically work in teams consisting of a technician, a specialist, and an advisor. (*Id.*, Ex. 1, pp. 21–24, 30). Robinson and White worked in a team between May and September of 1997. (*Id.*, Ex. 1, pp. 61, 69). Robinson alleges that White "place[d] negative information about [her] on the Automated Information System (AIS)," a system used for tracking bankruptcy cases involving the IRS which other IRS employees can access. (Docket Entry No. 1, p. 8; *see also* Docket Entry No. 25, Ex. 1, pp. 30, 35–37). Robinson also accuses White of "say[ing] negative things about [her] to other employees, to the attorneys and district counsel" and "try[ing] to discredit [her] work." (Docket Entry No. 25, Ex. 1, p. 37). Robinson did not hear White make any of these comments directly. (*Id.*, Ex. 1, p. 42). Finally, Robinson asserts that White left Robinson's file cabinets open, which could have, but did not, subject Robinson to discipline. (*Id.*, Ex. 1, pp. 37, 41).

Robinson filed EEO complaint number 2270 on July 24, 1997. In this complaint, Robinson alleged that:

> From 5–13–97 to present, management officials "allowed" me to be subjected to a hostile work environment as well as harassment by Liana White (co-worker). Liana White made false statements about me when she was informed that she would be charged with "insubordination" after refusing to work with me. Liana then began a vicious cycle to discredit my work performance on AIS history. "Management allowed Liona to harass me because I have an [sic] Civil Suit pending."

(*Id.*, Ex. 16, p. 6). On the complaint form, Robinson marked the box to state that she based her claim on "retaliation reprisal," not "race," "color," "sex," or "national origin" discrimination. (*Id.*). In response to this complaint, White filed an affidavit accusing Robinson of being a racist. (*Id.*, Ex. 1, p. 42). The dispute resulted in White's transfer to another location in September 1997. (*Id.*, Ex. 1, pp. 37, 69–70).

Robinson's whistleblower claim and constitutional claims arise out her communications with her congressman. Robinson wrote her congressman in August 1996, complaining of harassment and discrimination at her job. The congressman forwarded the complaint to the EEO. Robinson asserts a violation of her rights because "Ms. Linda Payonk, an inspector with IRS Internal Security, [twice] visited [the] Houston congressional office and asked to review Ms. Robinson's casefile. The assigned caseworker, assuming that Ms. Payonk was working on the complaint [the congressman's] office had forwarded to the EEO and Diversity Office, cooperated and copied documents from the casefile that were requested by Ms. Payonk." (Docket Entry No. 29, att. i, Letter of April 24, 1998 from Congressman Ken Bentsen, Jr. to Commissioner of IRS).

In April 1998, Robinson received a letter of reprimand from the IRS, citing the fact that her letter to the congressman included confidential information about specific taxpayers. (Docket Entry No. 25, Ex. 1, pp. 225–26). Robinson bases her constitutional and whistleblower claims on the letter of reprimand, though Robinson admits that the letter did not affect her pay or her benefits. (*Id.*, Ex. 1, pp. 232–33.). When the congressman found out about the letter of reprimand, he wrote the IRS Commissioner that he "was angered and appalled than an IRS inspector had obtained information from my office without disclosing her true purpose and used this information against my constituent rather [than] to help resolve her complaint as both she and I intended." (Docket Entry No. 29, att. i, Letter of April 24, 1998 from Congressman Ken Bentsen, Jr. to Com-

missioner of IRS). This incident attracted the attention of the local and national press. (*Id.*, atts. c–h).

On April 30, 1999, defendant filed a motion for summary judgment as to all Robinson's claims. This court considers this motion below.

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56. Under FED.R.CIV.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *See id.*

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## III. The Title VII Claims

### A. The Legal Standards

■ Robinson alleges that she was retaliated against and subjected to discrimination based on race and sex, in violation of Title VII. To state a *prima facie* case of race or sex discrimination, a plaintiff must show that she is a member of a protected class, that she was qualified for the position, that she suffered an adverse employment action, and that similarly situated employees outside the protected class were treated more favorably. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998); *Lo v. FDIC*, 846 F.Supp. 557, 562 (S.D.Tex. 1994), *aff'd*, 52 F.3d 1066 (5th Cir.1995).

■ Title VII also forbids an employer from discriminating against an employee because the employee "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. "A *prima facie* case of retaliation exists if the plaintiff establishes that (1) she participated in statutorily protected activity, (2) she received an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir.1995); *see also Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999); *Mat-*

*tern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997).

■ If the plaintiff successfully states a *prima facie* case of either discrimination or retaliation, the burden then shifts to the defendant to show a legitimate and nondiscriminatory reason for the adverse employment decision. The plaintiff must then show that the defendant's proffered reason is pretextual and that race motivated the challenged employment decision. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To prove a claim, the plaintiff need not show that the protected activity was the sole factor motivating the adverse action, but must show that "but for" the protected activity, she would not have been subjected to the adverse employment action. *See Long v. Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir.1996); *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507 (5th Cir.1994).

Defendant asserts that Robinson's Title VII claims should be dismissed because: (1) she received no "adverse employment action" necessary for a *prima facie* case under Title VII; and (2) she failed to raise a disputed fact issue as to the presence of discriminatory or retaliatory motives under the *McDonnell Douglas* burden-shifting framework. Defendant also asserts that Robinson's race and sex discrimination claims should be dismissed for failure to exhaust administrative remedies. Each of defendant's arguments is examined below.

## B. The Retaliation Claim

Robinson alleges that her supervisors retaliated against her for her EEO activity by giving her a substandard annual evaluation in February 1997 and by forcing her to work with a hostile coworker for an extended period.[3]

The Fifth Circuit has made it clear that "Title VII was only designed to address 'ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Central Apartment Management, Inc.*, 168 F.3d 875, 878 (5th Cir.1999) (quoting *Mattern*, 104 F.3d at 707); *see also Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir.1995) (per curiam). "'Ultimate employment decision' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.'" *Mattern*, 104 F.3d at 707 (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981)).

■ Langdale's performance evaluation of Robinson was not an "adverse employment action" within the meaning of Title VII. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir.1997) ("[A] poor performance evaluation alone, even if undeserved, is not an adverse action for purposes of Title VII."); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994); *Dupont–Lauren v. Schneider (USA), Inc.*, 994 F.Supp. 802, 824 (S.D.Tex.1998) ("[S]atisfactory but diminished evaluations do not constitute adverse employment actions giving rise to actionable retaliation claims."); *Shackelford v. Deloitte & Touche LLP*, No. CA 3–97–CV– 70–R, 1998 WL 345545, at *5, 7 (N.D.Tex. June 24, 1998); *Messer v. Meno*, 936 F.Supp. 1280, 1297 (W.D.Tex.1996), *aff'd in part and rev'd in part on other grounds*, 130 F.3d 130 (5th Cir.1997), *cert. denied sub nom., Texas Educ. Agency v.*

---

**3.** To the extent that Robinson relies on the letter of reprimand she received as a result of her contact with her congressman as the basis of her retaliation claim under Title VII, this claim is administratively unexhausted. Rob-

inson did not include the allegations relating to her contact with her congressman in any of the EEO complaints at issue. (Docket Entry No. 25, Exs. 7, 16).

*Messer*, —— U.S. ——, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999).

■ The IRS's failure to separate Robinson and White for several months is also not an adverse employment action under the statute. Rather, it is an agency "decision" "not akin to acts 'such as hiring, granting leave, discharging, promoting, and compensating.'" *Burger*, 168 F.3d at 879 (quoting *Dollis*, 77 F.3d at 782). In *Mattern*, the plaintiff complained that she faced hostility from co-workers, causing her anxiety.[4] *See* 104 F.3d at 705. The plaintiff, like Robinson, complained that her employer "knew of, but did nothing about, this hostility." *Id.* Nevertheless, the Fifth Circuit held that "[h]ostility from fellow employees ... and resulting anxiety, without more, do not constitute ultimate employment decisions, and therefore are not the required adverse employment actions." *Id.* at 707.

■ Even assuming that Robinson has stated a *prima facie* case, defendant has shown a legitimate and nondiscriminatory reason for the challenged actions. Robinson's 3.57 performance rating was considered "fully satisfactory" and was a considerable improvement from the 3.0 rating she had received in the previous year. Robinson's rating improved despite the fact that since the prior year, she had filed an EEO complaint challenging the 3.0 rating as unwarranted. Robinson's 3.57 rating placed her between the two other bankruptcy specialists that Langdale supervised, Rita Galvan (4.0) and Jacqueline Jackson (3.29). Defendant has articulated a legitimate and nondiscriminatory reason for Galvan's higher rating: Galvan's prior service as a bankruptcy technician "would have exposed [her] to knowledge and expe-

riences that would have helped her function as a bankruptcy specialist." (Docket Entry No. 25, Ex. 13, ¶ 2). Robinson had not previously served as a bankruptcy technician. Robinson has not raised a fact issue that defendant's proffered reason was pretextual and that the EEO complaints Robinson filed were a "but for" cause of the challenged employment action.

■ Similarly, defendant has asserted legitimate and nondiscriminatory reasons for its handling Robinson's relationship with White. Robinson conceded that until she was placed on White's team in May 1997, she never had any problem working with White. (Docket Entry No. 25, Ex. 1, p. 36). The IRS's decision to place White and Robinson on the same team cannot be considered retaliatory. Robinson also conceded that as a result of her repeated complaints about White, the IRS transferred White to another location in September 1997. (*Id.*, Ex. 1, p. 50). Robinson's retaliation claim rests on her allegation that the IRS was dilatory in taking this corrective action. Even if true, Robinson has not produced any summary judgment evidence suggesting that her prior EEO complaints were a "but for" cause of any delay.

Because Robinson has failed to raise a disputed fact issue as to whether she suffered an adverse employment action and as to whether her EEO activity was a "but for" cause of the challenged actions, this court GRANTS defendant's motion for summary judgment on Robinson's retaliation claim.

---

4. The plaintiff in *Mattern* was also subjected to a home visit from her supervisors after she called in sick, a verbal threat of being fired, a reprimand, a missed pay increase, having her tools stolen, and being placed on "final warning." *See Mattern*, 104 F.3d at 707. The Fifth Circuit found that none of these events constituted an "adverse employment action" because of their "lack of consequence." *Id.* at 708. While the plaintiff "may have been in jeopardy of discharge ... at some point in the future, this possibility obviously does not equal being discharged." *Id.* "To hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which might jeopardize employment in the future. Such expansion is unwarranted." *Id.*

## C. The Race and Sex Discrimination Claims

Robinson's race and sex discrimination claims also fail. Robinson did not suffer an "adverse employment action" within the meaning of Title VII; she introduced no summary judgment evidence indicating that her race or sex played any role in the employment actions she challenges; and she did not administratively exhaust her claims.

Before bringing a claim under Title VII, a plaintiff must exhaust administrative remedies through the EEOC by filing a "charge" of discrimination describing the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e–5(a), (e). "[A] rule of reason ... permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir. 1993) (alterations in original) (quoting *Terrell v. U.S. Pipe & Foundry Co.,* 644 F.2d 1112, 1123 (5th Cir.1981), *vacated sub nom., International Ass'n of Machinists & Aerospace Workers v. Terrell,* 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479 (1982)). "A Title VII cause of action 'may be based not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.' " *Id.* (quoting *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 451 (5th Cir.1983)); *see also Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460–61 (5th Cir.1970).

In this case, the EEO complaints Robinson filed did not mention allegations of racial or sex discrimination. Robinson marked only the box for "retaliation reprisal" on the EEO complaints and did not mark the boxes for "race," "color," or "sex," discrimination. (Docket Entry No. 25, Exs. 7, 16). Robinson's narratives in the EEO complaints did not mention racial or sex discrimination.

Robinson's claims for race and sex discrimination would not have fallen within the scope of a reasonable EEOC investigation into Robinson's retaliation claims. *See Randel v. United States Dep't of the Navy,* 157 F.3d 392, 395 (5th Cir.1998) ("Randel's racial discrimination claim is separate and distinct from his reprisal claim, and accordingly, he must exhaust his administrative remedies on that claim before seeking review in federal court."); *Hagan v. Caldera,* No. Civ. A. 97–2367, 1999 WL 280444, at *3 (E.D.La. May 4, 1999) (holding that the plaintiff could not assert claims of color, gender, or national origin discrimination when the EEOC charge alleged only racial discrimination and reprisal); *Magana v. Tarrant/Dallas Printing Inc.,* No. Civ. A. 3:97–0865D, 1998 WL 548686, at *2 (N.D.Tex. Aug.21, 1998) (holding that the plaintiff could not assert a race discrimination claim when the EEOC charge alleged only national origin discrimination); *Reno v. Metropolitan Transit Auth.,* 977 F.Supp. 812, 818–19 (S.D.Tex.1997) (holding that the plaintiff could not assert a sexual harassment claim when the EEOC charge alleged only sex, age, and race discrimination); *Guidry v. Zale Corp.,* 969 F.Supp. 988, 990–91 (M.D.La.1997).

For the reasons described above, this court GRANTS defendant's motion for summary judgment on Robinson's Title VII race and sex discrimination claims.

## IV. The Whistleblower Claim

In her complaint, Robinson "claims the status of a whistleblower," (Docket Entry No. 1, p. 4), because she was allegedly retaliated against for informing her congressman about the unfavorable working conditions at the Houston IRS office. Presumably, Robinson seeks relief under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified as amended in scattered sections of 5 U.S.C.) (the "WPA"), which amended the

Civil Service Reform Act of 1978, Pub.L. No. 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) ("CSRA").

■ The WPA does not give an aggrieved employee the right to seek relief directly in federal district court. *See Ugarte v. Johnson*, 40 F.Supp.2d 178, 1999 WL 167048, at *3 (S.D.N.Y. Mar.19, 1999); *Hooks v. Army and Air Force Exch. Serv.*, 944 F.Supp. 503, 506 (N.D.Tex.1996). Instead, in a "mixed case" involving both whistleblower and discrimination claims, an aggrieved federal employee can either (1) seek administrative relief through the Merit Systems Protection Board, an independent, quasi-judicial federal administrative agency, established to review civil service decisions, *see* 5 U.S.C. § 1221; or (2) file a complaint with the employing agency's EEO department. *See* 5 U.S.C. § 7702; *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir.1995). Robinson did not raise her whistleblower claim in any of her EEO complaints. Nor has she sought administrative relief for this claim under the procedures set forth in the WPA and CSRA.[5] (Docket Entry No. 29, p. 8). Because Robinson's whistleblower claim was not administratively exhausted in either setting, defendant is entitled to summary judgment on this claim.. *See Chaney v. Rubin*, 986 F.Supp. 516, 520–21 (N.D.Ill. 1997); *see also Ugarte*, 40 F.Supp.2d 178, 180; *Hooks*, 944 F.Supp. at 506.

## V. The *Bivens* Claims

■ Robinson asserts that she was retaliated against for complaining to her congressman about her workplace environment, "in violation of [her] First Amendment rights, in violation of her Fifth Amendment rights to due process, and in violation of her Equal protection rights under the Fourteenth Amendment." (Docket Entry No. 1, Ex. 4). Seeking mon-

ey damages for these alleged constitutional violations, Robinson has sued Robert Rubin in his official capacity. "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which [the] officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The real party-in-interest in this case is the Treasury Department, over which the individual defendant presides.

■ Defendant correctly asserts that Robinson cannot seek monetary damages from a federal agency on constitutional causes of action. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court created an implied cause of action for monetary damages against federal officials (sued in their individual capacities) who violate an individual's constitutional rights. However, the Court has recently held that a *Bivens* suit may not be brought against a federal agency directly. *See FDIC v. Meyer*, 510 U.S. 471, 484–87, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also Mahon v. Veterans Administration*, 1997 WL 32961 (2d Cir.1997) (unpublished disposition; table at 107 F.3d 3); *Groover v. County of San Diego Sheriff's Dep't*, 1995 WL 21434 (9th Cir.1995) (unpublished disposition; table at 46 F.3d 1141).

Because Robinson's constitutional claims are directed at a federal agency, not the federal officials who committed the alleged constitutional violations, her claims are foreclosed by clear Supreme Court precedent. Defendant is entitled to summary judgment on Robinson's constitutional claims.[6]

---

5. Robinson's only response to defendant's motion for summary judgment on the whistleblower claim was that she "has never filed a Merit Systems Protection Board petition." (Docket Entry No. 29, p. 8).

6. Defendant also argues that Robinson's *Bivens* claims are preempted by Title VII because they arise out of her employment discrimination claims. Because this court finds that defendant is entitled to summary judgment on other grounds, it does not reach this issue.

794

## VI. Conclusion

This court GRANTS defendant's motion for summary judgment. This case will be dismissed by separate order.

## ORDER

 On June 18, 1999, this court granted defendant's motion for summary judgment and entered final judgment in favor of defendant. (Docket Entry Nos. 34, 35). Plaintiff Vera Robinson moved for a new trial,[1] (Docket Entry No. 36), and defendant responded. (Docket Entry No. 38). "A motion to reconsider an order granting summary judgment is appropriate when the court is presented with newly-discovered evidence, when the court committed clear error, when there is an intervening change in controlling law, or when other highly unusual circumstances exist." *Becerra v. Asher*, 921 F.Supp. 1538, 1548 (S.D.Tex.1996), *aff'd*, 105 F.3d 1042 (5th Cir.), *cert. denied sub nom. Becerra v. Houston Indep. Sch. Dist.*, 522 U.S. 824, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997).

 None of these circumstances is present here. Robinson either rehashes the same arguments previously addressed to this court or presents evidence that she did not submit before the entry of judgment, despite the earlier availability of the evidence. She has not stated any grounds for the amendment or alteration of the judgment. *See id.; see also W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F.Supp. 1043, 1062 (S.D.Tex.1996), *aff'd* 127 F.3d 34 (5th Cir.1997). Furthermore, this court finds that the evidence that Robinson now submits would not create a genuine factual dispute on any material issue.

Accordingly, Robinson's motion for new trial is DENIED.

---

1. Robinson classifies her motion as a motion for new trial. "As no trial was held in the district court, it cannot logically be called a motion for new trial." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir.1997). The motion is correctly entitled a Rule 59(e) motion to alter or amend judgment. *See id.; Patin v. Allied Signal,* *Inc.*, 77 F.3d 782, 785 n. 1 (5th Cir.1996); *Lupo v. Wyeth–Ayerst Labs.*, 4 F.Supp.2d 642, 643 (E.D.Tex.1997) ("[T]en days after the entry of ... judgment, [plaintiff] filed a Motion for New Trial.... In doing so, he essentially sought reconsideration of the summary judgment ruling on that cause of action pursuant to Federal Rule of Civil Procedure 59(e).").