William L. QUINN, Plaintiff,

v.

Togo WEST, Jr., Secretary, Department
of Veterans Affairs, Defendant.

No. CIV. A. W–99–CA–294.

United States District Court,
W.D. Texas,
Waco Division.

March 19, 2001.

Lanelle L. McNamara, McNamara & McNamara, Waco, TX, for plaintiff.

Erich W. Schwartz, III, Waco, TX, R. Barry Robinson, Assistant U.S. Attorney, Austin, TX, for defendant.

### MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

This is an employment retaliation case brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)(A) ("WPA"). Defendant contends that he is entitled to summary judgment because Plaintiff cannot meet his initial burden to establish a *prima facie* case of retaliation under Title VII. Defendant also contends that Plaintiff has failed to exhaust his administrative remedies with regard to his whistleblower claim. Plaintiff responds by arguing that there is sufficient summary judgment evidence to establish that Plaintiff's complained of adverse employment actions were, more likely than not, motivated by retaliation for Plaintiff's Title VII protected activity and whistleblowing activity. Having reviewed the summary judgment evidence presented by the parties and the arguments presented in the motions, the Court finds that the Plaintiff has established a *prima facie* case of retaliation, and has presented sufficient evidence to create a genuine issue of material fact concerning whether Plaintiff would not have been subject to the adverse employment action in the absence of his having engaged in protected conduct. The Court also finds that Plaintiff's whistleblower claim has been administratively exhausted. Therefore, the Court finds that the Defendant's Motion to Dismiss, or Alternative Motion for Summary Judgment should be DENIED.

### I. Background Facts

Having conducted a review of all the unobjected to summary judgment evidence presented by the parties, and viewing that evidence in the light most favorable to the Plaintiff, the Court notes the following background facts.

Plaintiff was employed by the Veterans Affairs ("VA") Medical Center in Waco, Texas from June 1992 until June 1995 as the Associate Chief of Staff of Geriatrics and Extended Care. On October 12, 1992, Plaintiff received permanent medical staff privileges. The Waco VA facility was featured in the VA's publication, *Veterans Affairs Practitioner,* in November 1992. The article featured coverage of Plaintiff's geriatric program and was previewed by the VA Waco Medical Director, Mr. Wallace Hopkins. On November 4, 1992, Plaintiff reviewed a patient's medical chart and voiced concerns in a written report about the quality of care the patient received. The next day, Hopkins called Plaintiff into his office for a meeting regarding the previous day's report. During the meeting, according to Plaintiff, Hopkins shouted at him, and threatened to "ruin his career." Up until this meeting, Plaintiff had a good working relationship with Hopkins. On November 19, 1992, Plaintiff wrote a letter to the VA Regional Director seeking advice about the November 5, 1992 meeting with Hopkins, but never sent the letter. On November 24, 1992, Plaintiff wrote a letter to the Associate Chief Medical Director of Geriatrics and Extended Care at the Central Office of the VA in Washington, D.C. The letter summarized a conversation Plaintiff had

with the Associate Chief Medical Director concerning Hopkins' behavior on November 5, 1992.

At the end of December 1992, Hopkins appointed Dr. John Bryan as Temporary Chief of Staff at the Waco VA to replace the previous Chief of Staff, Dr. Wagner. Plaintiff's performance evaluation was conducted by Dr. Bryan. Plaintiff alleges that Mr. Hopkins told him that Hopkins was dissatisfied with Dr. Wagner's performance evaluation of Plaintiff, and ordered Dr. Bryan to complete another evaluation, even though Dr. Wagner had been Plaintiff's supervisor during the previous year. In June of 1993, Dr. Bryan delivered Plaintiff's performance evaluation for the time period of January 1992 until January 1993. The evaluation rated Plaintiff as "satisfactory" in four categories, and "low satisfactory" in the area of "personal qualities." When questioned about the evaluation by Plaintiff, Dr. Bryan stated that Mr. Hopkins prepared the evaluation.

In June of 1993, Plaintiff met with an Equal Employment Opportunity ("EEO") counselor to complain about his performance evaluation. The EEO counselor set up a meeting between Plaintiff and Dr. Bryan. At the meeting, Dr. Bryan agreed to change two ratings to "highly satisfactory," but refused to change the overall rating and the rating in personal qualities. On July 12, 1993, the EEO counselor told Plaintiff that his complaint did not come within EEO guidelines. Mr. Hopkins was the EEO Officer for the Waco VA Center, and was aware of Plaintiff's EEO complaint. According to Plaintiff, Mr. Hopkins told him that he had seen Plaintiff's EEO complaint, and that it was not a good complaint.

From this point forward, Plaintiff continued to receive poor performance evaluations in "personal qualities" from Dr. Bryan. In October of 1993, Mr. Hopkins notified Plaintiff that he was being ap-pointed as the Chair of the Search Committee that was going to interview candidates for the Chief of Staff position. During the time that Dr. Bryan was Acting Chief of Staff, Plaintiff had continued to express concerns regarding the quality of patient care at the Waco VA. In March of 1994, Plaintiff prepared a memorandum addressing his concerns at the request of Dr. Bryan. No action was taken. After conducting its search, the Search Committee was prepared to recommend its choice, but Mr. Hopkins told Plaintiff that he wanted Dr. Bryan as Chief of Staff. The committee agreed to recommend Dr. Bryan upon the instruction of Mr. Hopkins. In August of 1994, Dr. Bryan became Chief of Staff of the Waco VA. In September 1994, an External Peer Review Committee report raised the same patient care issues that Plaintiff had raised in March of 1994. The report included recommendations for addressing issues raised in the report. Dr. Bryan refused to permit discussion of any of the concerns raised in the report.

Plaintiff wrote a letter to the Secretary of the Veterans Affairs in January of 1995 discussing the quality of care issues Plaintiff had been raising with Dr. Bryan, and discussing how Plaintiff felt his efforts at improving patient care were being thwarted by Mr. Hopkins. On February 22, 1995, Plaintiff learned that his letter to the Secretary of the VA had been forwarded to the Regional Director, Mr. John Higgins, for investigation. A four person investigation team came to the Waco VA in February 1995 to evaluate the quality of care at the Waco VA facility. The investigation was completed in two working days. Plaintiff was not asked about his concerns for patient care during the investigation, rather he was asked about his performance reviews. On March 27, 1995, Plaintiff wrote to the Regional Director expressing concerns about the thoroughness

of the investigation. On April 13, 1995, the Regional Director wrote to Plaintiff and assured him that the investigation fully reviewed the concerns raised in the complaint. On April 17, 1995, Plaintiff discovered that he had been locked out of his office, and on April 25, 1995 wrote to the Regional Director requesting to file an EEO complaint of reprisal against Mr. Hopkins. Plaintiff alleged that Mr. Hopkins was systematically dismantling Plaintiff's service area—geriatrics. In April of 1995, the VA began the process of integration in an effort to cut costs and to provide more efficient health care to veterans in central Texas. The process effected four facilities in central Texas. Mr. Richard Harwell was appointed Director of the Central Texas VA Health Care System. Mr. Harwell also served as the Director of the Temple, Texas VA facility.

On May 30, 1995, Plaintiff met with Mr. Harwell in Temple. Plaintiff expressed concern that his position in the Waco VA facility was uncertain because of the investigation. Mr. Harwell told Plaintiff that he was aware of all of Plaintiff's complaints regarding the Waco VA facility, including the EEO complaint Plaintiff sent to the Regional Director. Plaintiff told Mr. Harwell that he wanted out of central Texas because Plaintiff felt his career was being ruined. Plaintiff requested a transfer to the Austin, Texas VA center. Plaintiff contacted the Director of the Austin VA facility, but she was unable to bear the expense of Plaintiff's salary requirements. On June 16, 1995, Plaintiff met with Dr. Sammer, the Director of the Temple VA facility. Dr. Sammer told Plaintiff that there would be no relocation pay for a voluntary transfer to Temple, and that he knew Plaintiff would be involuntarily transferred to Temple by Mr. Harwell anyway. On June 15, 1995, Plaintiff was informed by the EEO of Department of Veterans Affairs that his EEO complaint sent to Regional Director Higgins was being forwarded to the EEOC. On June 7, 1995, Plaintiff was notified that the investigation of his complaint to the Secretary of Veterans Affairs was complete, and that a final report was being forwarded to Mr. Harwell. The notice stated that Mr. Harwell would meet with Plaintiff to discuss the outcome of the investigation. This meeting never took place, and Plaintiff never received a copy of the report. On June 21, 1995, Plaintiff was contacted by members of the press regarding the investigation. On June 21, 1995, Plaintiff was informed that he would begin work at the Temple VA facility on July 9, 1995. On June 22, 1995, a local newspaper printed a story regarding the investigation.

On July 9, 1995, Plaintiff reported for work at the Temple VA facility and was assigned to the "Gold Team." This team was assigned teaching responsibilities for medical students from Texas A & M Medical School. Upon his arrival at the Temple facility, Plaintiff was informed that he would have to sign a new pay agreement, even though his current pay agreement had not expired. In October of 1995, Plaintiff finally signed a one-year pay agreement that did not include the salary for his eliminated administrative position. On August 4, 1995, Plaintiff again contacted an EEO counselor. On August 22, 1995, Plaintiff requested a transfer back to the Waco VA facility until he could be transferred to another VA facility outside of Texas. Mr. Harwell indicated that he would approve the transfer. Shortly thereafter, however, Plaintiff was informed by the Temple VA Director that Plaintiff was being transferred to Employee and Environmental Health at the Temple VA. After Plaintiff's EEO interview on August 29, 1995, Plaintiff signed a counseling report, but the EEO counselors did not provide Plaintiff with a copy of the counseling report.

In September of 1995, Plaintiff submitted his formal EEO complaint, which references a claim for "reprisal for prior EEO activity" and notes that Plaintiff claims damages because of the publication of the results of the investigation into patient care at the Waco VA. On November 1, 1995, Plaintiff was notified that his EEO complaint was accepted for investigation. The letter advised Plaintiff that the Secretary had referred a patient complaint against Plaintiff to Mr. Harwell, and that Mr. Harwell would be conducting a peer review of the treatment of the patient.

In October of 1995, Plaintiff did not receive the teaching stipend from Texas A & M Medical School that he had been receiving since he began teaching duties at the Waco VA facility. After contacting Texas A & M concerning the stipend, Plaintiff was informed that Temple Director, Dr. Sammer, had recommended to Texas A & M officials that Plaintiff's teaching stipend be terminated.

Plaintiff was detailed to an administrative position in Reno, Nevada in February of 1996. Plaintiff was appointed as Associate Chief of Staff of Geriatrics and Extended Care. After having worked in the position for one month, Plaintiff was requested to apply for, applied for, and received a faculty appointment in the medical school affiliated with the Reno VA. The staff at the Reno VA recommended that Plaintiff be retained to fill the position for which he was qualified. Plaintiff heard nothing further from the Reno VA.

Plaintiff has continued to receive satisfactory performance evaluations since he has been employed at the Temple VA. His immediate supervisor noted in Plaintiff's 1997–98 evaluation that Plaintiff was qualified to move up to a supervisory position. In 1999, Plaintiff's supervisor recommended that Plaintiff be named Acting Chief of Intermediate Care at Temple VA and that he receive administrative

pay for the position. The title was approved, but the pay was denied. In Plaintiff's performance evaluation for 2000, Plaintiff's immediate supervisor ranked Plaintiff "outstanding" on three of the five rating factors. Plaintiff's second level supervisor, Dr. Westblom, refused, however, to approve the evaluation, and required Plaintiff's supervisor to downgrade the evaluation to "high satisfactory" in the three categories that had been rated as "outstanding." Plaintiff had, just prior to the evaluation, submitted an application for the Chief of Staff position at Temple VA. Performance evaluations are one of the factors used to determine whether to interview a candidate for an open position at the Temple VA.

## II. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum and Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 at 598 (1969)). It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Boudeloche v. Grow Chemical Coatings Corp.,* 728 F.2d 759, 762 (5th Cir.1984); *Kaiser,* 677 F.2d at 1050. When considering such a motion, the complaint must be liberally construed in the plaintiff's favor, and all facts pleaded in the complaint should be accepted as true. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1986), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). "The question therefore is whether in the light most favorable to plaintiff and with every doubt resolved in his behalf, the

complaint states any valid claim for relief." 5 Wright and Miller, *Federal Practice and Procedure,* Section 1357 at 601. While all well-pleaded facts are taken as true for the purposes of a 12(b)(6) motion to dismiss, a court cannot accept as true "conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). If the Court relies on evidence presented outside the pleadings, the motion to dismiss shall be converted to a motion for summary judgment and "disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6).

### III. Summary Judgment

The purpose of summary judgment is to pierce the pleadings and assess the proof to determine if a genuine need for trial exists. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment procedure isolates and disposes of factually unsupported claims or defenses, assisting courts in the just, speedy and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (1986). A dispute is genuine if the issue could be resolved in favor of either party. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 131 (5th Cir.), *cert. denied,* 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is material if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matter of Gleasman,* 933 F.2d 1277, 1281 (5th Cir. 1991). The party seeking summary judg-

ment bears an "exacting burden of demonstrating that there is no actual dispute as to any material fact in the case." *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982).

In determining whether the movant has met his burden, the Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *See id.* at 1031. All reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the movant. *See id.* at 1031; *Jones v. Western Geophysical Co.,* 669 F.2d 280, 283 (5th Cir.1982). The fact that it appears to the Court that the non-movant party is unlikely to prevail at trial or that the movant's statement of facts appears more plausible is not a reason to grant summary judgment. *Id.* at 283.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond with any factual assertion that would preclude summary judgment. *See Cleckner v. Republic Van & Storage Co.,* 556 F.2d 766, 771 (5th Cir.1977). Rule 56(e) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." In this respect, the burden on the non-moving party is not especially heavy; however, he must show specific facts that present a genuine issue of material fact worthy of trial rather than showing mere general allegations. *See*

*Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978).

## IV. Title VII Retaliation

■ To support a Title VII retaliation claim, the plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between his participation in the protected activity and the adverse employment action. *Messer v. Meno,* 130 F.3d 130, 140 (5th Cir.1997); *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995).

■ If the plaintiff establishes a *prima facie* case, then he has raised a presumption of retaliation and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The key issue in determining summary judgment on a retaliation claim is whether the plaintiff can produce evidence which could support a finding that he would not have been fired in the absence of his having engaged in protected conduct. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398 (5th Cir.1999); *Long v. Eastfield College,* 88 F.3d 300, 304 n. 4 (5th Cir.1996) ("ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision") (citing *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985)). The ultimate burden of proof, therefore, is on the plaintiff to establish that "but for" unlawful discrimination he would not have suffered an adverse employment action. *Mayberry,* 55 F.3d at 1089.

## V. Whistleblower Protection Act

■ The Whistleblower Protection Act was enacted in 1989 to increase protections for whistleblowers by prohibiting adverse employment actions taken because a federal employee discloses information that the employee reasonably believes evidences a violation of any law or actions that pose a substantial and specific danger to public health or safety. *Grisham v. United States,* 103 F.3d 24, 26 (5th Cir. 1997); 5 U.S.C. § 2302(b)(8). Under the WPA, employees with the authority to take personnel actions are forbidden to do so as a result of any disclosure of information by an employee that the employee reasonably believes evidences a violation of law, rule, or regulation, or evidences gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Watson v. Department of Justice,* 64 F.3d 1524, 1527 (Fed.Cir.1995). Plaintiff must establish by a preponderance of the evidence that: (1) he made a protected disclosure; (2) subsequent to the disclosure he was subject to disciplinary action; and (3) the disclosure was a *contributing factor* to the personnel action taken against him. *Carr v. Social Security Admin.,* 185 F.3d 1318, 1322 (Fed.Cir.1999) (emphasis supplied). In *Trimmer v. Department of Labor,* the Tenth Circuit Court of Appeals equated the phrases "unfavorable personnel decision" and "adverse employment action." 174 F.3d 1098, 1101–02, 1103 (10th Cir.1999) Thus, the Court must analyze Plaintiff's case by applying a "case-by-case approach, examining the unique factors relevant to the situation at hand." *Sanchez v. Denver Public Schools,* 164 F.3d 527, 532 (10th Cir.1998) (Title VII and ADEA retaliation claim). As it applies in this case, 5 U.S.C. § 7702(a)(2)(B) provides that in "any matter" before an executive agency which involves "any issue of discrimination," the agency shall resolve such matter. The section then provides: "The decision of the agency in any such matter shall be a judicially reviewable action unless the employee appeals the matter to

the [Merit Service Protection] Board." 5 U.S.C. § 7702(a)(2)(B).

 The WPA does not give an aggrieved employee the right to seek relief directly in federal district court. *Robinson v. Rubin*, 77 F.Supp.2d 784, 793 (S.D.Tex.1999); *Ugarte v. Johnson*, 40 F.Supp.2d 178 (S.D.N.Y.1999); *Hooks v. Army and Air Force Exch. Serv.*, 944 F.Supp. 503, 506 (N.D.Tex.1996). Instead, in a "mixed case" involving both whistleblower and discrimination claims, an aggrieved federal employee can either (1) seek administrative relief through the Merit Systems Protection Board ("MSPB"), an independent, quasi-judicial federal administrative agency, established to review civil service decisions, 5 U.S.C. § 1221; or (2) file a complaint with the employing agency's EEO department. *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir.1995); 5 U.S.C. § 7702. A "mixed case" complaint may be filed with an agency EEO department or with the MSPB, but not in both places at once. 5 U.S.C. § 7702; 29 C.F.R. § 1614.302(b). A plaintiff is required to exhaust his claims in the forum he has chosen before filing a civil action. *McAdams*, 64 F.3d at 1142 (quoting *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir.1990)); *see also Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

## VI. Analysis

Plaintiff complains that two adverse actions amount to discrimination and retaliation under Title VII and violate the WPA. First, Plaintiff complains of his involuntary transfer to the Temple VA, and the resulting loss of pay and other employment benefits he enjoyed while employed at the Waco VA. Second, Plaintiff complains of the damage caused to his personal and professional reputation by the Administrative Investigation of February 1995, the results of which were adverse to Plaintiff and were released to the public.

## A. Title VII Retaliation

 Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation under Title VII. Defendant argues that Plaintiff's alleged Title VII "protected activity" did not relate to an employment action that rose to the level of an adverse employment decision, and is therefore not "protected activity" under Title VII. Plaintiff alleges that he contacted an EEO counselor about a low performance rating on June 23, 1993. Plaintiff's prior activity was limited to this meeting with an EEO counselor. The EEO counselor prepared a report of contact and informed Plaintiff that a low performance rating did not constitute a cognizable EEO report. A poor performance evaluation alone, even if undeserved, is not an adverse action for purposes of Title VII. *Robinson v. Rubin*, 77 F.Supp.2d 784, 790 (S.D.Tex.1999).

 Plaintiff contends, however, that his initiation of an EEO reprisal complaint against Mr. Hopkins on April 25, 1995 is sufficient "protected activity" under Title VII. Plaintiff also argues that there is sufficient summary judgment evidence to establish, at the time Plaintiff was involuntarily transferred to the Temple VA facility, that Mr. Hopkins, Dr. Bryan, Mr. Higgins, and Mr. Harwell knew of Plaintiff's prior EEO activity. Plaintiff also contends that the summary judgment evidence is sufficient to establish that these individuals decided that Plaintiff would never advance his career while at the Waco VA facility. Plaintiff argues that the temporal proximity of his transfer to Temple to his EEO protected activity raises a genuine issue of material fact regarding the causal connection element of his *prima facie* case. The Court must conclude that

when an adverse employment action occurs within sixty (60) days of Plaintiff's letter to the Regional Director complaining of retaliation for EEO protected activity, a fact question exists regarding the causal nexus requirement in the Plaintiff's *prima facie* case.

The Defendant, however, has articulated a legitimate, non-retaliatory reason for Plaintiff's transfer—that Plaintiff's administrative position was abolished and Plaintiff's "unprofessional conduct." Plaintiff argues that these proffered reasons are pretextual because another individual assumed Plaintiff's administrative responsibilities after Plaintiff's transfer to Temple and that the administration had made a conscious decision to prevent Plaintiff from advancing his career while at the Waco VA. Plaintiff cites the deposition of Dr. Burek, who replaced Dr. Sammer as Director of the Temple VA facility, and Dr. Price, Acting Chief Medical Officer at the Temple VA facility when Plaintiff was transferred, in support of this contention. The Court finds that the deposition testimony of these two individuals is sufficient to raise a fact issue regarding whether Defendant's proffered reason for Plaintiff's transfer to Temple was a pretext for unlawful retaliation under Title VII or the WPA.

## B. Whistleblower Protection Act

The plain language of section 7702(a)(2)(B) provides that if an employee alleges discrimination as a basis for agency action, he may either file suit in the district court or pursue an administrative procedure after an adverse agency decision. 5 U.S.C. § 7702(a)(2)(B); 29 C.F.R. § 1614.310(a). As the Eleventh Circuit Court of Appeals explained in *Doyal v. Marsh,* 777 F.2d 1526, 1535 (11th Cir. 1985):

> If an employee does not allege that "a basis" of the agency action was discrimination, he may appeal an agency decision directly to the MSPB and from the MSPB to the court[ ] of appeals [for the Federal Circuit].... [See 5 U.S.C. S 7703(b) ]. If, however, the employee does allege discrimination, he may either immediately file suit in a district court or pursue an administrative procedure.

In other words, following an adverse agency decision, the employee has the option in a "mixed case" complaint of filing a civil action in the district court rather than appealing to the MSPB. *Doyal,* 777 F.2d at 1536. Moreover, "the various statutory provisions of the [WPA] and its legislative history indicate a clear Congressional preference for combining various aspects of a single agency determination under one review proceeding, both in the administrative and judicial channels." *Christo v. Merit Sys. Protection Bd.,* 667 F.2d 882, 883 (10th Cir.1981). To force Plaintiff to bifurcate his case and return to the administrative process for further consideration of his WPA claim would frustrate principles of judicial economy and serve no useful purpose. *Woodman v. Runyon,* 132 F.3d 1330, 1342 (10th Cir.1997). The key to the application of these principles, however, is the employee's allegation that not only was he subjected to an adverse action because of his whistleblowing but also because of discrimination. Plaintiff has consistently stated that his complaints were based on either his whistleblowing letter to the Secretary of the Department or on his prior EEO activity, and has raised both as a basis for the adverse employment action taken by Defendant. Because this is a "mixed" case involving claims of discrimination and retaliation for whistleblowing activities, and Plaintiff has *alleged* discrimination and whistleblowing as a basis for the adverse action taken by the VA, the Plaintiff may either file suit in the district court or pursue an administrative procedure after an adverse agency decision.

Thus, Plaintiff has administratively exhausted his complaint under the WPA.

Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss, or Alternative Motion for Summary Judgment should be **DENIED.**